# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**TERESA DARLENE ALLOWAY,**

      Plaintiff,

  v.                                  **Civil Action 2:16-cv-990**
                                       **Judge Michael H. Watson**
                                       **Magistrate Judge Jolson**

**COMMISSIONER OF SOCIAL SECURITY,**

      Defendant.

## REPORT AND RECOMMENDATION

Plaintiff, Teresa Darlene Alloway, brings this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for social security disability insurance benefits ("DIB"). Plaintiff alleges disability beginning September 14, 2012. (*See* Doc. 10 at 2). For the reasons that follow, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

## I. FACTUAL AND MEDICAL BACKGROUND

Plaintiff filed this case on October 10, 2016 (Doc. 1), and the Commissioner filed the administrative record on December 20, 2016 (Doc. 9). Plaintiff filed a Statement of Errors on February 3, 2017, 2016 (Doc. 10), the Commissioner responded on March 16, 2017 (Doc. 11), and Plaintiff filed a Reply Brief on March 30, 2017 (Doc. 12).

### A. Personal Background

Plaintiff was born in 1954. (Doc. 9, Tr. 119). She graduated high school in 1972 and took two years of business management courses in the 1990s, but did not earn a degree. (*Id.*, Tr.

143). She worked full-time from 1993 until 2002 as a manager of a Dollar General store, earning $11.45 per hour. (*Id.*, Tr. 144). From 2004 through 2012, she worked 32 hours per week as a clerk at a gas station, earning $7.70 per hour. (*Id.*). Plaintiff alleged in her application that she became disabled on September 15, 2012, the day her employer "closed down." (*Id.*, Tr. 143).

### B. Relevant Medical Evidence

#### 1. Phillip Short, M.D. (Treating Physician)

Dr. Short is Plaintiff's primary-care physician. Dr. Short's records that are part of this case begin in 2011, and most of them pertain to Plaintiff's hyperlipidemia, diabetes, and hypertension, as well as her vitamin B12 deficiency. (*See, e.g.*, Doc. 9, Tr. 324–72, 387–99). For example, a record from May 2012 notes that Plaintiff was seen "for follow up for diabetes"—Plaintiff had gained 16 pounds since her last visit, but the exam was otherwise unremarkable. (*Id.*, Tr. 271–72). Likewise, an illustrative record from 2013 notes that Plaintiff's "sugars doing fairly well," and her neuropathy was "well-controlled" with medication. The records from 2014 and 2015 address these same issues. During a visit in February 2014, for example, Plaintiff reported that Lyrica was helping her neuropathy; her exam was "unremarkable"; her blood pressure was "good"; and Dr. Short "stressed importance of weight reduction diet compliance and exercise." (*Id.*, Tr. 341–42). On this last point, Dr. Short's notes continually report Plaintiff's failure to comply with diet, weight loss, and exercise recommendations. (*See, e.g.*, *id.*, 328, 387, 392).

During the middle of 2014, Plaintiff's complaints to Dr. Short shifted and began to note other ailments in addition to those explained above. Specifically, on May 21, 2014, Plaintiff reported "some discomfort" in the joint of both thumbs. (*Id.*, Tr. 345). During this visit, Dr.

Short examined Plaintiff and noted no evidence of synovitis, swelling or tenderness in her thumb joints, and a good range of motion, and found that Plaintiff had "good grip strength bilaterally." (*Id.*, Tr. 347). To further investigate Plaintiff's complaints, Dr. Short ordered X-rays. The X-rays showed "[n]o fracture," "[n]o dislocation," and "[j]oint spaces are generally maintained." Overall, "the impression was negative." (*Id.*, Tr. 357, 360).

Plaintiff continued to see Dr. Short, and, in January 2015, he completed a medical-source statement. (*Id.*, Tr. 400). He wrote that Plaintiff's diagnoses include diabetic neuropathy, hypertension, hyperlipidemia, and diabetes. (*Id.*). He categorized her prognosis as "fair." He also noted "persistent leg pain," which was "moderately severe" as her only symptom. (*Id.*). When asked about the frequency and length of the treatment relationship, Dr. Short did not respond. (*See id.*).

In the medical-source statement, Dr. Short additionally stated that Plaintiff is functionally limited in a number of ways—limited to walking less than one block without rest or severe pain; limited to sitting for 20 minutes at one time; unable to stand for any significant length of time without requiring position change; and unable to sit and stand/walk for more than 2 hours each in an 8-hour workday. (*Id.*). Dr. Short also found that Plaintiff was likely to take 2 to 3 unscheduled breaks during the workday due to pain/paresthesia and adverse effects of medication. (*Id.*). He estimated that each of these unscheduled breaks would average 15 minutes. (*Id.*). He also found that Plaintiff could only lift less than 10 lbs. occasionally; 10 lbs. rarely; and never lift 20 lbs. or more. (*Id.*, Tr. 402). She could rarely twist, stoop, crouch, or squat; never climb stairs and ladders, and reach overhead bilaterally no more than 50% of the time. (*Id.*). Plaintiff would not have any difficulty with reaching, handling, or fingering. (*Id.*). Dr. Short stated that Plaintiff was likely to experience symptoms severe enough to interfere with

attention and concentration needed to perform even simple work tasks 5% of the day but did not explain why. (*Id.*). She was also likely to miss about 2 days per month as a result of her impairments/treatment. (*Id.*). Dr. Short noted that these limitations started before 2011. (*Id.*).

In March 2015, Plaintiff again saw Dr. Short. He noted that Plaintiff was "not following her diet" and not "losing weight." (*Id.*, Tr. 387). She complained of some paresthesia in her hands and feet that the doctor believed was diabetic neuropathy, but no muscle weakness, chest pain, or vision trouble. (*Id.*, Tr. 387, 389). In June 2015, Plaintiff reported similar problems but reported that Lyrica was helping with the diabetic neuropathy. (*Id.*, Tr. 392).

On July 20, 2015, an EMG was performed on Plaintiff's bilateral upper and lower extremities. (*Id.*, Tr. 404). The testing revealed severe left median nerve carpal tunnel syndrome; moderate right median nerve carpal tunnel syndrome; and active left cervical and lumbosacral motor radiculopathy. (*Id.*, Tr. 406).

In August 2015, an MRI of Plaintiff's neck revealed moderate central disc protrusion, mild to moderate central canal stenosis, medium broad-based disc bulge, mild to moderate foraminal stenosis, and mild facet arthropathy. (*Id.*, Tr. 423). The impression was "[m]ultilevel degenerative disc disease as detailed above most pronounced at C4-C5 where there is a central disc protrusion with impingement of the ventral spinal cord." (*Id.*, Tr. 424). An MRI of the lumbar spine showed "[n]o evidence of nerve impingement, [n]o significant degenerative disc disease, [and only] mild L4-L5 and L5-S1 facet arthropathy." (*Id.*, Tr. 458–59). Examination for bilateral carpal tunnel in August 2015, revealed some diminished grip strength, weak Tinel's and Phalen's test, and normal wrists. (*Id.*, Tr. 432–35). It was noted that splints worn on the wrists helped with pain somewhat. (*Id.*, Tr. 436). Surgery was recommended, but not scheduled. (*Id.*).

### 2. *Bradley Arndt, D.C. (Chiropractor)*

In May and August 2013, Plaintiff went to her chiropractor, Bradley Arndt, D.C., and denied "having any current health complaints or physical symptoms." (*Id.*, Tr. 311, 312). Her prognosis was excellent. (*Id.*). In November 2013, Dr. Arndt completed a form stating that Plaintiff had mild cervical spine pain and stiffness but that this condition did not cause any impairment. (*Id.*, Tr. 427–28). In March 2014, Plaintiff saw chiropractor Dr. Arndt and reported mild neck tension, of pain level 2 out of 10. (*Id.*, Tr. 372). She reported her problem is relieved with chiropractic adjustment. (*Id.*). At the beginning of June 2014, Plaintiff complained of level 5 pain in her back; Dr. Arndt noted tenderness and recommended ice packs. (*Id.*, Tr. 373). Plaintiff then began seeing Dr. Arndt more frequently for adjustments, and by the end of June, her back pain was 0 out of 10, and neck tension was 1 out of 10. (*Id.*, Tr. 380).

### 3. *Eli Perencevich, D.O. and Anne Prosperi, D.O. (State Agency Reviewers)*

In April 2013, Eli Perencevich, D.O., evaluated Plaintiff's medical records for the state agency. (*Id.*, Tr. 54–60). Dr. Perencevich opined that Plaintiff could lift, carry, push and pull 10 pounds frequently and 20 pounds occasionally; stand and/or walk about 6 hours in an 8-hour workday; and sit about 6 hours in an 8-hour workday. (*Id.*, Tr. 58). This was consistent with light exertional work. 20 C.F.R. § 404.1567(b). She could push/pull only frequently with the left leg due to mild degenerative joint disease. (*Id.*). Plaintiff could frequently stoop and climb ramps/stairs; occasionally kneel, crouch and crawl; and never climb ladders, ropes, or scaffolds. (*Id.*, Tr. 58–59). These postural limitations were based on Plaintiff's peripheral neuropathy, morbid obesity, and some limited range of motion in the cervical spine. (*Id.*, Tr. 59). Finally, Plaintiff needed to avoid concentrated exposure to vibration and all exposure to hazards such as machinery and heights. (*Id.*). In support, Dr. Perencevich described some of Plaintiff's prior

5

physical health records, including a March 2013 office visit where Plaintiff was non-compliant with her diet, there was no edema, and she reported her peripheral neuropathy was well controlled by medication. (*Id.*, Tr. 56).

In January 2014, Anne Prosperi, D.O., evaluated Plaintiff's medical records for the state agency. (*Id.*, Tr. 63–73). Dr. Prosperi also opined that Plaintiff could perform light exertional work but was limited to only frequent bilateral foot and hand controls due to her peripheral neuropathy, and frequent bilateral handling, fingering, and feeling. (*Id.*, Tr. 71–72). Plaintiff agreed with Dr. Perencevich that Plaintiff could frequently stoop and climb ramps/stairs; occasionally kneel, crouch and crawl; and never climb ladders, ropes, or scaffolds; and that Plaintiff needed to avoid concentrated exposure to vibration and all exposure to hazards such as machinery and heights. (*Id.*, Tr. 71–73).

    4.    *Judith Brown, M.D. (Consultative Examiner)*

In January 2014, the agency sent Plaintiff for a consultative examination with Judith Brown, M.D. (*Id.*, Tr. 314–25). Plaintiff reported having diabetes for 15 years with some related numbness in her hands and feet. (*Id.*, Tr. 314). She reported taking insulin and Lyrica, which helped with numbness and pain "somewhat." (*Id.*). Plaintiff also reported 25 years of back pain. (Tr. 314). Plaintiff was obese at 5'3" and 243 pounds. (*Id.*, Tr. 315). She was able to ambulate with a normal gait without any assistive devices; she was stable at station and comfortable in the supine and sitting positions. (*Id.*, Tr. 316). She was able to walk on the heels, walk on the toes, and walk heel-to-toe without difficulty. (*Id.*, Tr. 317). Examination of the cervical spine revealed no paravertebral muscle spasm and no tenderness. (*Id.*, Tr. 316). Examination of the hands showed tenderness of the thumb bilaterally, however, she was able to make a fist with both hands, and there was no redness, warmth, swelling, or atrophy present.

(*Id.*, Tr. 317). Straight leg raise test was normal in both the sitting and supine position. (*Id.*). There was decreased pinprick and light touch sensation noted in a stocking and glove pattern extending to the knees and wrists bilaterally. (*Id.*). Her lungs were clear, and her heartbeat was normal. (*Id.*, Tr. 318). Manual muscle testing showed full strength in all extremities, no muscle spasm, and no atrophy. (*Id.*, Tr. 319–20). She had slightly diminished range of motion in her spine and entirely normal range of motion in all other joints. (*Id.*, Tr. 320–22). Dr. Brown concluded that Plaintiff's "ability to perform work-related activities such as bending, stooping, lifting, walking, crawling, squatting, carrying and traveling as well as pushing and pulling heavy objects appears to be at least mildly impaired by the findings noted. The claimant could probably perform moderate duty work." (*Id.*, Tr. 318).

### C. Relevant Hearing Testimony

Plaintiff testified at the Administrative Hearing on September 11, 2015. (*Id.*, Tr. 36–53). She testified that she has been suffering from neck pain for thirty years, has neuropathy in her hands and legs, and has sharp, shooting pains down her thumbs and big toes. She testified that she believes she's unable to "physically, mentally" perform her previous jobs. She also testified that she no longer engages in enjoyable hobbies, like knitting, crocheting, and gardening. She now lives with her mother so that her mother can assist her with daily living, like grocery shopping. She testified that she no longer can lift items, "gets winded," and has to take several stops when walking any distance. She additionally testified that she cannot button or pin anything and regularly drops silverware. She also testified that she has jitters in her legs.

### D. Relevant Portions of the ALJ's Decision

Plaintiff suffers from the following severe impairments: Diabetes Mellitus, type 2 with peripheral neuropathy, cervical and lumbosacral radiculopathy, bilateral carpal tunnel syndrome,

7

severe left and moderate right bilateral knee arthritis, degenerative disc disease, osteoarthritis and obesity. The ALJ noted Dr. Short's opinion that Plaintiff is likely to miss two or more days of work per month and unable to perform more than sedentary work but found Dr. Short's opinion inconsistent with the record evidence. (Doc. 9, Tr. 28). Ultimately, the ALJ limited Plaintiff to light work except that she "is able to frequently push or pull, operate foot controls, climb ramps or stairs, stoop, handle, finger, and feel; never climb ladders, ropes, or scaffolds; occasionally kneel, crouch, and crawl; can have occasional exposure to vibration; and can have no exposure to unprotected heights." (*Id.*, Tr. 25).

## II.   LEGAL STANDARD

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). The Commissioner's findings of fact must also be based upon the record as a whole. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985). To that end, the Court must "take into account whatever in the record fairly detracts from [the] weight" of the Commissioner's decision. *Rhodes v. Comm'r of Soc. Sec.*, No. 2:13-cv-1147, 2015 WL 4881574, at *2 (S.D. Ohio Aug. 17, 2015).

## III.   DISCUSSION

Plaintiff sets forth two statements of error. First, she argues that "[t]he ALJ erred in failing to give controlling weight to the opinion of Dr. Philip Short," Plaintiff's treating

physician. (Doc. 10 at 6). Second, Plaintiff asserts substantial evidence does not support the ALJ's RFC determination. (*Id*. at 13). The Court considers Plaintiff's arguments in turn.

**A. Dr. Short's Opinion**

Two related rules govern how an ALJ is required to analyze a treating physician's opinion. *Dixon v. Comm'r of Soc. Sec.*, No. 3:14-cv-478, 2016 WL 860695, at *4 (S.D. Ohio Mar. 7, 2016). The first is the "treating physician rule." *Id.* The rule requires an ALJ to "give controlling weight to a treating source's opinion on the issue(s) of the nature and severity of the claimant's impairment(s) if the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record." *LaRiccia v. Comm'r of Soc. Sec.*, 549 F. App'x 377, 384 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527(c)(2)) (internal quotation marks omitted). Closely associated is "the good reasons rule," which requires an ALJ always to give "good reasons . . . for the weight given to the claimant's treating source opinion." *Dixon*, 2016 WL 860695, at *4 (quoting *Blakely*, 581 F.3d at 406 (alterations in original)); 20 C.F.R. § 404.1527(c)(2). The treating physician rule and the good reasons rule together create what has been referred to as the "two-step analysis created by the Sixth Circuit." *Allums v. Comm'r of Soc. Sec.*, 975 F. Supp. 2d 823, 832 (N.D. Ohio 2013).

Here, Plaintiff's treating physician, Dr. Short, completed a form, indicating that Plaintiff would be capable of less than sedentary work and would be absent from work two or more days per month. (Doc. 9, Tr. 400–04). During the hearing, the ALJ asked Plaintiff about this form. (*Id*., Tr. 40). Plaintiff testified that Dr. Short did not consult with her regarding the form and that Dr. Short normally sees her "pretty quick[ly]." (*Id.*). The ALJ gave this opinion "little weight."

> The opinion of Philip Short, M.D., [Plaintiff's] treating physician, indicating that [she] was capable of less than sedentary work and would be absent from work about two days per month is given little weight because it is inconsistent with the medical evidence of record. (Exhibit 12F). The record shows generally only mild to moderate objective findings and symptoms, which have been responsive to regular, conservative treatment, *as discussed above*. [Plaintiff] has received only chiropractic treatment for her spinal issues and her diabetes and related symptoms have been adequately controlled with medication. The evidence also does not show severe symptoms that would cause her to be absent from work multiple times per month.

(*Id.*, Tr. 28 (emphasis added)).

The "as discussed above," included, *inter alia*:

- The medical evidence of record shows that [Plaintiff] has degenerative disc disease of the cerical and lumbar spine. . . . Despite this diagnosis, [Plaintiff] has received little real treatment for this condition and has not required narcotic pain medication or surgical repair.

- The record indicated that [Plaintiff] has left knee osteoarthritis. . . . Again, [Plantiff] has received little real treatment for this condition, which is only mild in nature.

- The medical evidence suggests that [Plaintiff] has carpel tunnel syndrome. . . . Even with these moderate to severe findings, [Plaintiff] has made relatively few complaints of pain and has not yet received any treatment for this condition.

- The evidence demonstrates that the claimant has diabetes mellitus with peripheral neuropathy (Exhibit 2F, p. I). The claimant has been prescribed Levemir and Novolg to treat this condition (Exhibit 2F, p. I). The treatment notes generally indicate that the claimant's blood sugar has been under fair control, with no hypoglycemic episodes (Exhibit 2F, pp. 2, 7; 3F, pp. 2, 6, I5, 26; and 8F, p. I). The claimant has complained of numbness and burning in her hands and feet, consistent with a diagnosis of diabetic peripheral neuropathy (Exhibits 6F, p. I and I IF, p. I). Upon examination, she had had decreased sensation in a stocking and glove pattern in her upper and lower extremities; however, she has maintained a normal gait (Exhibit 6F, pp. 3, 5). On the other hand, an EMG and nerve conduction study performed in July 2015 was *inconsistent* with diabetic peripheral neuropathy (Exhibit 13F, p. 3). In any event, her symptoms are "fairly well-controlled" on Lyrica (Exhibits 2F, pp. I, 2, 7; 3F, pp. 2, 6, I I, 20; and 8F, p. I I).

(*Id.*, Tr. 26–27) (emphasis in original).

The ALJ's explanation for assigning little weight to Dr. Short's opinions contains enough detail to satisfy the good-reasons requirement. It is sufficiently clear that the ALJ came to his conclusion because he found that Dr. Short's opinions were unsupported by specific, objective evidence in the record. The Sixth Circuit "'has consistently stated that the [Commissioner] is not bound by the treating physician's opinions, and that such opinions receive great weight only if they are supported by sufficient clinical findings and are consistent with the evidence.'" *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 652 (6th Cir. 2006) (en banc) (quoting *Bogle v. Sullivan,* 998 F.2d 342, 347–48 (6th Cir. 1993)). In other words, the ALJ found that, despite the treating relationship, Dr. Short's opinions lacked sufficient evidence to support his ultimate conclusion regarding Plaintiff's abilities. For these reasons, it was not error for the ALJ to assign little weight to them.

**B. Residual Functional Capacity**

Plaintiff also challenges the ALJ's RFC determination. This second assignment of error is closely linked to the first in that Plaintiff relies heavily on Dr. Short's opinion for support.

The ALJ is responsible for determining a Plaintiff's residual functional capacity. *See* 20 C.F.R. § 404.1546(c). While medical source opinions are considered, the final responsibility for deciding the RFC is reserved to the Commissioner. *See* 20 C.F.R. § 404.1527(d); *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 439 (6th Cir. 2010) ("The Social Security Act instructs that the ALJ—not a physician—ultimately determines a claimant's RFC."). An RFC determination is a legal decision rather than a medical one, and the development of a claimant's RFC is solely within the province of an ALJ. *See* 20 C.F.R. §§ 404.1527(e), 405.1546. *See Poe*

*v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009) (stating that the responsibility for determining a claimant's RFC rests with the ALJ, not a physician).

Here, the ALJ crafted the following RFC:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant is able to frequently push or pull, operate foot controls, climb ramps or stairs, stoop, handle, finger, and feel; never climb ladders, ropes, or scaffolds; occasionally kneel, crouch, and crawl; can have occasional exposure to vibration; and can have no exposure to unprotected heights.

(Doc. 9, Tr. 25).

Plaintiff challenges this RFC, claiming "she is unable to perform the frequent lifting, standing and walking required for light work." (Doc. 10 at 14). Plaintiff notes that, as set forth in SSR 83-10, light work requires "a good deal of walking or standing," which is the "primary difference between sedentary and most light jobs." Additionally, light work requires the frequent lifting or carrying of objects weighing up to 10 pounds. SSR 83-10. Plaintiff asserts that her severe neuropathy, obesity, and bilateral carpal tunnel syndrome preclude her from performing the requirements of light work on a sustained basis.

The ALJ, however, considered Plaintiff's neuropathy, obesity, and bilateral carpal tunnel syndrome. As to neuropathy, the ALJ noted the diagnosis but also explained that "an EMG and nerve conduction study performed in July 2015 was inconsistent with diabetic peripheral neuropathy (Exhibit 13F, p. 3). And, in any event, her symptoms are 'fairly well-controlled' on Lyrica (Exhibits 2F, pp. I, 2, 7; 3F, pp. 2, 6, I I, 20; and 8F, p. I I )." (Doc. 9, Tr. 27). As to carpel tunnel syndrome, the ALJ relied on the record—"[Plaintiff] has made relatively few complaints of pain and has not yet received any treatment for this condition." (*Id.*, Tr. 27). Finally, as to obesity, the ALJ "considered its effect both on the severity of [Plaintiff's]

limitations and on her residual functional capacity." (*Id.*, Tr. 27–28). All of this supports the ALJ's RFC determination.

In crafting the RFC, the ALJ also relied on the state agency medical reviewers, giving their opinions "great weight" overall because of their expertise and because their opinions were consistent with the medical evidence of record. (*Id.*, Tr. 28). The ALJ, however, did not rely on the state reviewers opinions regarding manipulative limitations because Plaintiff was later diagnosed with carpal tunnel syndrome. (*Id.*). On that issue, the ALJ noted that "[t]he record shows generally only mild to moderate objective findings and symptoms, which have been responsive to regular, conservative treatment, as discussed above." (*Id.*). The ALJ accordingly crafted a more restrictive RFC than the state agency reviewers suggested regarding Plaintiff's manipulative limitations.

The ALJ additionally considered Dr. Brown's opinion. Dr. Brown examined Plaintiff and found her "ability to perform work-related activities such as bending, stooping, lifting, walking, crawling, squatting, carrying, and traveling as well as pushing and pulling heavy objects appears to be at least mildly impaired" and concluded that Plaintiff "could probably perform moderate duty work." (*Id.*, Tr. 318). The ALJ gave this opinion only "partial weight" because it did not provide a function-by-function assessment, and Plaintiff's carpel tunnel diagnosis came after Dr. Brown's examination. (*Id.*). The ALJ thus crafted an RFC that was more restrictive than Dr. Brown's opinion.

The RFC also was much more restrictive than what the records of Plaintiff's chiropractor would warrant. For example, in May and August 2013, Plaintiff went to her chiropractor, Bradley Arndt, D.C., and denied "having any current health complaints or physical symptoms." (*Id.*, Tr. 311, 312). Her prognosis was excellent. (*Id.*). In November 2013, Dr. Arndt completed

a form stating that Plaintiff had mild cervical spine pain and stiffness but that this condition did not cause any impairment. (*Id.*, Tr. 427–28). In March 2014, Plaintiff saw Dr. Arndt and reported mild neck tension, noting a pain level of 2 out of 10. (Tr. 372). She reported her problem is relieved with chiropractic adjustment. (*Id.*). At the beginning of June 2014, Plaintiff complained of level 5 pain in her back; Dr. Arndt noted tenderness and recommended ice packs. (*Id.*, Tr. 373). Plaintiff saw Dr. Arndt more frequently for adjustments, and, by the end of June, her back pain was 0 out of 10, and neck tension was at a level 1. (*Id.*, Tr. 380).

Finally, the Court acknowledges certain evidence in record arguably supports a more restrictive RFC. That, however, is not the question for this Court. *See, e.g*, *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (noting that "there is a 'zone of choice' within which the Commissioner can act, without the fear of court interference"). Instead, the Court must decide if substantial evidence supports the ALJ's conclusion, and it does. Taking into account all that the ALJ considered, substantial evidence supports his RFC determination.

## IV. CONCLUSION

For the reasons stated, it is **RECOMMENDED** that the Plaintiff's Statement of Errors be **OVERRULED** and that judgment be entered in favor of Defendant.

## V. PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or

14

modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1). Failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140, 152–53 (1985).

    IT IS SO ORDERED.


Date: September 1, 2017          /s/ Kimberly A. Jolson
                                                            KIMBERLY A. JOLSON
                                                             UNITED STATES MAGISTRATE JUDGE